Chief Justice Robee.tson
delivered the Opinion of the Court.
This is an action of assumpsit instituted by John En-gletnan against the cxecutors of Simon Engleman, his deceased father, for work and labor by himself and his two slaves, for the decedent in his lifetime.
Upon the trial, on the general issue, the plaintiff in the action proved that life had lived with his father until ids' death, which occurred in 1829; that he, (the plaintiff) was married in the spring of the year 1828, when he was a minor; that he was not-twenty one years old until 1829; that he managed the farm of his father (whose estate was large) during the years 1828-9, and that both himself and two slaves, whom he got by his wife, worked on the farm.
The executors proved that, after their testator’s death and prior to the commencement of this suit, they and the said John, “to avoid a law suit,” submitted his claim for compensation for services to the arbitration of David Shanks, Joseph Paxton and Adam Wilson, who awarded two hundred dollars for the year 1829.
On the foregoing proof, the counsel for the executors moved the court to instruct the jury, that, as the plaintiff in the action, was a minor during the year 1828, they should find against him, unless they believed that *438 the testator had expressly promised to pay him for that year. The coart overruled the motion, and instructed them that they had a right to infer a promise by the testator, “from all the circumstances,” if they should be-lieve that lie requested his son to render the services.
Verdict ty judgment»
A son muy recover of his father's ex ors for labor done by hi iiself and his sldves in his minority, upon proof, from winch a promise of payment ruay be inferred, without proving an jxpress promise. ilut the facts, that the son married in his minority brought hts wife and two slaves obtainedby her, to his anther's, and continued in the man \ge-mentofthefarrn until he came of age -are not sufficient to justify a % erdict for the son.
As to a parol ward, oñe arbi-tíTt°h.e behoved thatí’iedefence te) a portion of the piamtirr sde manct, was sus-tamed ; the oth-e/ testified that it was his impression that no award was made in relation to that portion the evidence of the former, being consistent v'iih the submission, and more positive, is conclusive : the a . ard is held to be a bar to this, as well as to the other portion of the demand, and a verdict therefor, set aside.
The jury found a verdict for one hundred and sixty five dollars in damages, for which the court gave judgment, after overruling a motion for a new trial.
The circuit court did not err in overruling the motion for instruction. An express promise was not indispensable. But we are inclined to think, that the proof was insufficient to authorize the inference, that it was the understanding of the father and son that the former should pay the latter for the year 1828. The only fact which could, in any degree, tend to such a conclusion, was the marriage; but as that did not occur until sometime in the spring of that year, and as the son after-wards continued to live in the family and work and superintend as he had done before, it seems to us that the fact, that the father had consented that he might marry and still live in the family as he had done, together with his wife and her two slaves, is insufficient to justify -the deduction that the father intended to give up his dominion over the son, or to pay him for his services, or for those of the two slaves, during the remnant of the year .whilst he- continued in minority. And, surely, there could be no ground for presuming á promise or an intention to pay for the son’s services pri- or to his marriage. Wherefore, it is the opinion of this court, that the jury had not “a right to infer from all the circumstances” a promise by the father to pay the son for the year 1828.
We thin* also, that the submission and award, though both were parol, should have been deemed a bar to this The submission included the entire claim for compensation for 1838 and 1829; and one of the arbitra- { gyvore,' that it was his impression that nothing was allowed for 1828, in consequence of the infancy. An- . *439 other arbitrator swore only that it was his impression that “mo award was made in relation” to the claim for 1828.
Several claims being referred, by a general submission, an award for .plt’f for one or more, silent as to the others, v ill be taken to be against him, as to the latter.
As the claim was entire, tiie rational deduction is, that the sum awarded for 1S29 was intended as the whole compensation to which the son was deemed entitl d for all the services for which he claimed compensation. Even had he presented distinct claims for each year, if, as we infer to have been the fact, the submission was general and unconditional, the legal deduction from the award of two hundred dollars for 1829, without any allusion to 1828, would be, that the whole claim, as submitted, had been considered and disposed of by the arbitrators. See Cald, on Arbitration 124-5. As there was no intimation that the submission was conditional, or ita quod, the jury had no right to infer that the claim for 1828, had not been considered, even had there been no positive testimony on that point; but it seems to us that Shanks’ testimony should alone have been satisfactory had extrinsic proof been necessary.. He believed that the infancy was relied on, and that therefore the claim for 1828 was not allowed. And the improbability that the claim for that year would have been forgotten by the claimant, or pretermitted by the arbitrators, (and more especially as the claim for both years seemed to have been submitted as a unit,) fortifies the belief of Shanks, and renders his testimony imposing. The “impression” of another of the arbitrators, that “no award was made ” as to 1828, did not countervail the testimony of Shanks: first, because the import of that impression is indeterminate; for it would be difficult to decide whether the witness meant that the arbitrators did not investigate the claim for 1828, or that the award did not expressly mention it; and second, because, if he meant the former, the correctness of his impression is intrinsically less probable than that of Shanks. Shanks’ testimony therefore fortifies the deduction of law from the character of the submission and award.
Wherefore, the judgment of the circuit court is reversed, and the cause remanded for a new trial.